UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NICOLAS ROSAS-GUTIERREZ,<br><br>Defendant. | Case No. 09-CR-0054 (PJS/FLN)<br>Case No. 12-CV-1214 (PJS)<br><br>ORDER |

Laura M. Provinzino, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Bruce R. Williams, WILLIAMS LAW OFFICE, for defendant.

Defendant Nicolas Rosas-Gutierrez ("Rosas") pleaded guilty to conspiracy to distribute methamphetamine and was sentenced to 135 months in prison. Rosas now moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, on the grounds that he was denied effective assistance of counsel and coerced into pleading guilty. For the reasons set forth below, Rosas's motion is denied.

I. BACKGROUND

Rosas was indicted on February 19, 2009 on one count of conspiracy to distribute methamphetamine and one count of distribution of methamphetamine.[1] He was represented at his August 11, 2009 arraignment by Assistant Federal Defender Caroline Durham. On August 19, 2009, retained attorney Charles L. Hawkins filed a notice of appearance on Rosas's behalf, and Durham's representation was terminated. ECF No. 8. Shortly thereafter, attorneys

---

[1]The February 19 indictment was replaced on October 6, 2009 by a two-count superseding indictment. ECF No. 45. Rosas pleaded guilty to the first count of that superseding indictment.

Nelson L. Peralta and Lisa Lodin Peralta filed a notice of appearance informing the Court that they would be serving as co-counsel with Hawkins on behalf of Rosas. ECF No. 35.

Rosas pleaded guilty on November 23, 2009 to conspiring to distribute 50 grams or more of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Both Hawkins and Nelson Peralta represented Rosas at the plea hearing. Plea Tr. at 2 [ECF No. 77] ("Plea Tr."). Both Hawkins and Nelson Peralta again appeared on Rosas's behalf at the sentencing hearing on September 10, 2010. Sent'g Tr. at 2 [ECF No. 71] ("Sent'g Tr."). As noted, Rosas was sentenced to 135 months in prison.

Rosas now collaterally attacks his sentence on three grounds. First, Rosas alleges that he was denied effective assistance of counsel because, he claims, Hawkins had a conflict of interest stemming from his prior representation of one of Rosas's co-conspirators. Second, Rosas alleges that his guilty plea was invalid because he was pressured by Hawkins into pleading guilty, and because Hawkins failed to give him all of the information that he needed to make an informed decision. And third, Rosas alleges that Hawkins was ineffective in failing to pursue "safety valve" relief under 18 U.S.C. § 3553(f).

The Court held an evidentiary hearing on Rosas's motion and heard testimony from Rosas, Hawkins, and Nelson Peralta. Based on that testimony and the other evidence in the record, the Court finds that Rosas's challenges are meritless.

## II. ANALYSIS

Under 28 U.S.C. § 2255(a), "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the

sentence to vacate, set aside or correct the sentence." Rosas argues that his sentence was (1) imposed in violation of the Sixth Amendment because he was denied effective assistance of counsel and (2) imposed in violation of the Due Process Clause of the Fifth Amendment because his guilty plea was involuntary and uninformed.

### A. Hawkins's Successive Representation of Lucio and Rosas

Rosas alleges that he received ineffective assistance of counsel because, before representing Rosas in this case, Hawkins represented Jose Luis Lucio, a co-conspirator of Rosas, in a related case. *See United States v. Lucio*, No. 09-CR-0049(2) (D. Minn. filed February 19, 2009). Rosas argues that, had his case proceeded to trial, one of the government's main witnesses against him — perhaps the government's *only* witness against him — would have been Lucio. Rosas further argues that, because Hawkins had previously represented Lucio, Hawkins would not have been able to effectively cross-examine him. Because of this conflict of interest, Rosas argues, Hawkins failed to provide effective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, Rosas must show that (1) Hawkins's performance fell below an objective standard of reasonableness, *see Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), and (2) there is a reasonable probability that, but for Hawkins's errors, the result of Rosas's proceeding would have been different, *id*. at 694. Rosas "faces a heavy burden." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

As an initial matter, the Court notes that Hawkins did not represent Lucio and Rosas simultaneously. Hawkins moved to withdraw as Lucio's counsel on June 8, 2009, and that motion was granted on June 17, 2009. Hawkins did not file a notice of appearance on behalf of Rosas until August 19, 2009. In cases in which the successive representation of a prosecution

witness and a defendant is alleged to have created a conflict of interest, "[t]he mere fact that a trial lawyer had previously represented a prosecution witness does not entitle a defendant to relief." *United States v. Flynn*, 87 F.3d 996, 1001 (8th Cir. 1996). Instead, "[t]he defendant must show that this successive representation had some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one." *Id*.

For a number of reasons, Rosas has failed to show that Hawkins's prior representation of Lucio had an "actual and demonstrable adverse effect" on Hawkins's representation of Rosas:

First, both Rosas and Hawkins testified at the evidentiary hearing that Rosas was informed of Hawkins's prior representation of Lucio during the first meeting between Rosas and Hawkins. In other words, Rosas knew of the potential conflict before he entered into a representation agreement with Hawkins. Rosas did not formally waive any conflict of interest, *see Noe v. United States*, 601 F.3d 784, 791-92 (8th Cir. 2010), but he was nevertheless aware of the potential for a conflict before he hired Hawkins.

Second, Rosas's contention that Lucio was the government's key witness against him is belied by the record. The record contains little reason to believe that Lucio even would have been called to testify at Rosas's trial, much less played a central role. For example, nothing in Rosas's Presentence Investigation Report ("PSR") suggests that Lucio was a critical witness against Rosas. To the contrary, the PSR refers to multiple witnesses who identified Rosas as a source of methamphetamine.

Third, even if Lucio would have been called to testify at Rosas's trial — and even if Hawkins would have been unable to cross-examine Lucio — either of the Peraltas could have cross-examined Lucio. Unlike Hawkins, the Peraltas had never represented Lucio.[2]

Fourth, even if Hawkins had been Rosas's only attorney, it is not clear how Hawkins's inability to cross-examine a witness who was never called — at a trial that never took place — had "some actual and demonstrable adverse effect on the case," as opposed to "merely an abstract or theoretical one." *Flynn*, 87 F.3d at 1001. Apart from Rosas's claim that Hawkins coerced him into pleading guilty because of Hawkins's prior representation of Lucio (a claim that is discussed and rejected below), Rosas does not even attempt to explain how Hawkins's prior representation of Lucio adversely affected Rosas's case.[3]

---

[2] Rosas contends that the Peraltas were never his attorneys, but acted only as translators for Hawkins. The Court rejects Rosas's contention.

Rosas signed a joint-representation agreement with Hawkins and the law firm of Peralta and Peralta, Ltd. (of which Nelson and Lisa are the only two members). *See* Evid. Hr'g Def. Ex. 1. Defendants do not normally sign representation agreements with translators, and translators do not normally form law firms. Moreover, Rosas paid $10,000 to the Peralta firm. *Id.* Again, defendants do not normally pay $10,000 retainers to translators.

Nelson Peralta appeared on Rosas's behalf — as an attorney, not as a translator — at both the plea hearing and the sentencing hearing, as is reflected in the record of those hearings. *See* Plea Tr. at 2; Sent'g Tr. at 2. Moreover, Nelson Peralta testified credibly at the evidentiary hearing that he and Lisa Peralta actively participated in Rosas's defense, by, inter alia, attending meetings with Rosas and conducting legal research on his behalf.

[3] Hawkins testified credibly at the evidentiary hearing that he learned nothing during his representation of Lucio that affected his defense of Rosas. According to Hawkins, only once during his representation of Lucio was Rosas's name even mentioned, and that was only in passing. Specifically, during a proffer session with federal agents, Lucio verbally identified the subjects of several dozen pictures. Lucio identified the subject of one of those pictures as "Nicolas" (or perhaps "Nicholas"). Hawkins testified credibly that he had not even realized that the "Nicolas" identified by Lucio at the proffer session was Rosas until he was informed of that

(continued...)

Finally, Rosas cannot show how Hawkins's prior representation of Lucio had any effect on his sentence. Rosas's crime carried a 120-month mandatory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(A). Rosas was sentenced to a 135-month term of imprisonment, a sentence which fell at the bottom of the range recommended by the Sentencing Guidelines. The decision as to the length of Rosas's sentence was the Court's, and the Court determined — for the reasons reflected in the transcript of Rosas's sentencing hearing — that the sentence of 120 months sought by Hawkins would not have been sufficient to achieve the objectives of 18 U.S.C. § 3553(a). Rosas does not cite anything that Hawkins could have done or said in connection with his sentencing that would have resulted in a shorter sentence, much less explain how that omission was connected to Hawkins's prior representation of Lucio.

In sum, Rosas has not demonstrated that "the result of the [underlying] proceeding would have been different" but for Hawkins's prior representation of Lucio. *Strickland*, 466 U.S. at 694. Indeed, Hawkins achieved a very favorable outcome for Rosas. At the time that Rosas was sentenced, the government identified Zeferino Gutierrez-Ayala as the co-conspirator "whose conduct most approximated [Rosas's] conduct." ECF No. 65 at 2. Gutierrez was sentenced to 210 months' imprisonment — 75 months longer than Rosas. *See United States v. Gutierrez-Ayala*, No. 09-CR-0049(1) (D. Minn. filed Feb. 19, 2009).

For these reasons, the Court denies Rosas's claim for relief on the basis of Hawkins's prior representation of Lucio.

---

[3](...continued)
fact after Rosas was sentenced.

*B. Validity of Rosas's Guilty Plea*

Rosas contends that his guilty plea was uninformed because Hawkins failed to fully discuss the "ramifications of entering a guilty plea" with him prior to the plea hearing. ECF No. 81 at 6. Rosas further contends that his guilty plea was involuntary because Hawkins pressured him to plead guilty by telling him that he would receive a higher sentence if he chose to go to trial. Hawkins was motivated to coerce him to plead guilty, Rosas suggests, because Hawkins was afraid that his prior representation of Lucio would come to light during a trial.

Rosas's allegations that his guilty plea was uninformed and involuntary are directly contradicted by his own testimony at the plea hearing. At that hearing, the Court exhaustively reviewed Rosas's rights and the consequences of his plea of guilty until the Court was satisfied that Rosas was making an informed decision. For example, the Court explained each of Rosas's rights, and ensured that Rosas understood that, by pleading guilty, he would be giving up those rights. Plea Tr. at 9-13. The Court also took pains to make certain that Rosas's plea was voluntary. The Court specifically asked Rosas whether he was pleading guilty voluntarily and of his own free will, and Rosas swore that he was. *Id*. at 27. The Court also specifically asked Rosas whether he had been forced, threatened, or coerced into pleading guilty, and Rosas swore that he had not. *Id*. Rosas also assured the Court that he was "satisfied with the services that [he had] received from Mr. Hawkins." *Id.* at 8. Representations made by a defendant at a plea hearing "carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Moreover, Rosas alleges that he felt pressured into pleading guilty because Hawkins told him that, if he went to trial and was convicted, he would likely receive a longer prison term. But that statement was *true*. The Sentencing Guidelines recommended a sentence of 135 to 168 months for Rosas, and he received a sentence of 135 months — the bottom of that range. Had he not pleaded guilty and instead been convicted after a trial, Rosas would not have received a three-level reduction in his offense level for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, and the Sentencing Guidelines would have recommended a sentence of 188 to 235 months. Although the Court has broad authority to impose a sentence outside of the range recommended by the Sentencing Guidelines, the Court is nevertheless required to give consideration to the recommendation of the Sentencing Guidelines under 18 U.S.C. § 3553(a)(4), and the Court is quite certain that it would have given Rosas a substantially longer sentence if he had not taken responsibility for his crime.

Moreover, the government informed Rosas prior to his guilty plea that it was prepared to file an information pursuant to 21 U.S.C. § 851 to establish that Rosas had a prior felony conviction for a drug offense. The mandatory-minimum sentence under 21 U.S.C. § 841(b)(1)(A) for the offense to which Rosas pleaded guilty is 10 years, but that mandatory minimum is increased to 20 years if the defendant has previously been convicted of a felony drug offense. In other words, had Rosas gone to trial and been found guilty, and had the government established that Rosas had a prior conviction for a felony drug offense, the *lowest* sentence that this Court could have imposed would have been 240 months — 105 months longer than the sentence that Rosas received.

In short, the information that Hawkins provided to Rosas was accurate — and, far from coercing Rosas into pleading guilty, Hawkins helped to ensure that Rosas made an informed decision. Given that Rosas makes no claim of actual innocence — and given that Rosas received a sentence that was 75 months shorter than the sentence of a similarly situated co-conspirator and 105 months shorter than the lowest sentence that he was likely to receive if he had been convicted after a trial — it appears that Hawkins did excellent work in representing Rosas.

Finally, Rosas alleges that Hawkins's advice to plead guilty was driven (at least in part) by Hawkins's desire to keep secret his prior representation of Lucio. This claim makes no sense. Not only was Hawkins's prior representation of Lucio a matter of public record, but, as explained above, Hawkins personally informed Rosas of that representation before Rosas decided to retain Hawkins. Hawkins had nothing to hide — from Rosas or anyone else.

For these reasons, the Court rejects Rosas's claim that his guilty plea was not voluntary and informed.

### C. Hawkins's Failure to Pursue Safety-Valve Relief

As noted, Rosas's offense carried a mandatory-minimum sentence of 10 years' imprisonment. *See* 21 U.S.C. § 841(b)(1)(A). But the Court could have sentenced Rosas below that 10-year mandatory minimum if he had qualified for the "safety valve" under 18 U.S.C. § 3553(f). Rosas alleges that Hawkins was ineffective in failing to pursue safety-valve relief.

Rosas's claim is meritless. Rosas cannot show that Hawkins acted unreasonably in failing to seek safety-valve relief for Rosas[4] — and Rosas cannot show that, if Hawkins had

---

[4]Rosas does not claim that Hawkins failed to inform him about the safety valve; indeed, Rosas acknowledged at the evidentiary hearing that Hawkins had explained the safety-valve
(continued...)

sought safety-valve relief, "a reasonable probability exists that the result of the sentencing would have been different," *Deltoro-Aguilera v. United States*, 625 F.3d 434, 437 (8th Cir. 2010) — for the simple reason that Rosas was not *eligible* for the safety valve. In order for Rosas to be eligible for the safety valve, the Court would have had to make the following findings:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
> 
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon . . . in connection with the offense;
> 
> (3) the offense did not result in death or serious bodily injury to any person;
> 
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
> 
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . .

18 U.S.C. § 3553(f).

Rosas was ineligible for safety-valve relief for at least two reasons:

First, as the Court pointed out at Rosas's sentencing hearing, "Mr. Rosas was no low-level dealer. He was instead a major supplier of methamphetamine." Sent'g Tr. at 22. Multiple defendants in two large drug-conspiracy cases identified Rosas as a major source of

---

[4](...continued)
factors to him. Instead, Rosas claims only that Hawkins's failure to argue for the safety valve constituted ineffective assistance of counsel.

methamphetamine.  ECF No. 65 at 2.  Under those circumstances, it is doubtful that Rosas satisfied the fourth of the safety-valve criteria — viz., that he not be "an organizer, leader, manager, or supervisor of others in the offense."  18 U.S.C. § 3553(f)(4).

Second, Rosas unquestionably did not satisfy the fifth criterion — viz., that he "truthfully provide[] to the Government all information and evidence [he] has concerning the offense."  18 U.S.C. § 3553(f)(5).  The record is clear that at no point was Rosas willing to meet with the government and "proffer" — that is, share information about his offense.  At the sentencing hearing, Hawkins informed the Court that Rosas had decided "for his own personal reasons not to cooperate in this matter."  Sent'g Tr. at 9-10.  The Court then explained to Rosas that, unless he was willing to proffer, the Court could not sentence him below the 10-year mandatory minimum.  *Id* at 15-16.  At the Court's request, Rosas confirmed that he understood that his decision not to proffer meant that the lowest sentence that he could receive would be 10 years' imprisonment.  *Id*. at 16.

In short, Rosas was informed — both by Hawkins and by the Court — that he was not eligible for the safety valve because of the decision that he made not to proffer.  Obviously, Hawkins did not act unreasonably in failing to seek safety-valve relief that was not available — and that Rosas knew was not available — because of a decision that Rosas had made.  Just as obviously, Hawkins's failure to argue for the safety valve did not harm Rosas, as any such argument would have been futile.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendant Nicolas Rosas-Gutierrez's motion to vacate, set aside, or

correct his sentence pursuant to 28 U.S.C. § 2255 [ECF No. 80] is DENIED.  No certificate of appealability will issue.


Dated:  April 3 , 2013                             s/Patrick J. Schiltz
                                                   Patrick J. Schiltz
                                                   United States District Judge